UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Ahmed M. H., | Case No. 19-cv-1175 (JRT/TNL) |
| Petitioner, | |
| v. | REPORT & RECOMMENDATION |
| William P. Barr, Attorney General, | |
| Chad F. Wolf, Acting Secretary, Department of Homeland Security,[1] | |
| Matthew T. Albence, Acting Director, Immigration and Customs Enforcement,[2] | |
| Peter Berg, Director, St. Paul Field Office, Immigration and Customs Enforcement, and | |
| Hollien Eric, Kandiyohi County Sheriff, | |
| Respondents. | |

Ahmed M. H., A 063-692-127, Kandiyohi County Jail, 2201 Twenty-Third Street NE, Suite 101, Wilmar, MN 56201 (for Petitioner); and

Ana H. Voss, Ann M. Bildtsen, and Gregory G. Brooker, Assistant United States Attorneys, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 (for Respondents Barr, Wolf, Albence, and Berg).

---

[1] Wolf is the current Acting Secretary of the Department of Homeland Security. *Chad F. Wolf*, U.S. Dep't of Homeland Sec., https://www.dhs.gov/person/chad-f-wolf (last visited Nov. 19, 2019). The Court has substituted Wolf for Kevin McAleenan. *See* Fed. R. Civ. P. 25(d) (public officer's "successor is automatically substituted as a party" and "[l]ater proceedings should be in the substituted party's name").

[2] Albence is the current Action Director of U.S. Immigration and Customs Enforcement. *ICE Leadership*, U.S. Immigration & Customs Enf't, U.S. Dep't of Homeland Sec., https://www.ice.gov/leadership (last visited Nov. 19, 2019). The Court has substituted Albence for Thomas Homan. *See* Fed. R. Civ. P. 25(d).

1

## I. INTRODUCTION

This matter comes before the Court on Petitioner Ahmed M. H.'s Petition for Writ of Habeas Corpus ("Petition") (ECF No. 1) under 28 U.S.C. § 2241. The Petition has been referred to the undersigned for a report and recommendation to the district court, the Honorable John R. Tunheim, Chief District Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1.

Based upon the record, memoranda, and proceedings herein, **IT IS HEREBY RECOMMENDED** that the Petition be **GRANTED IN PART** and **DENIED IN PART** as set forth below.

## II. BACKGROUND

Petitioner is a native and citizen of Somalia. (Mem. in Supp. at 1, ECF No. 3; Oral Decision of the Immigration Judge ("IJ Decision) at 1, ECF No. 13-1.) In 2014, Petitioner entered the United States as a lawful permanent resident on an IR-2 immediate relative immigrant visa.[3] (Mem. in Supp. at 1; IJ Decision at 2; Ex. 2 at 2-3 to Minner Decl.)

In August 2018, Petitioner pleaded guilty to and was convicted of possessing a controlled substance (methamphetamine) in state district court in North Dakota. (IJ Decision at 3; Ex. 3 to Minner Decl., ECF No. 8-1.) On October 3, 2018, "following [his] completion of local charges," Immigration and Customs Enforcement ("the government") took Petitioner into custody and commenced removal proceedings

---

[3] The IR-2 visa is available to unmarried children under 21 years of age of United States citizens. *Family-Based Immigrant Visas*, U.S. Dep't of State, https://travel.state.gov/content/travel/en/us-visas/immigrate/family-immigration/family-based-immigrant-visas html (last visited Nov. 19, 2019). Petitioner was 19 at the time and his father is a citizen of the United States. (Mem. in Supp. at 1; IJ Decision at 2; Ex. 2 at 1-3 to Decl. of Angela Minner, ECF No. 8-1.)

2

based on his controlled-substance conviction.[4] (Pet. ¶ 11(a); Exs. 1, 4 to Minner Decl., ECF No. 8-1.) Petitioner has been detained under the mandatory detention provisions of 8 U.S.C. § 1226(c)[5] since that time. (Resp. to Pet. at 4-5, ECF No. 7; Ex. 5 to Minner Decl., ECF No. 8-1; *see* Mem. in Supp. at 2.) Section 1226(c) requires the government to take into custody any alien who is deportable by reason of having committed a controlled-substance offense. 8 U.S.C. §§ 1226(c)(1)(B), 1227(a)(2)(B)(i).

On December 11, 2018, the Immigration Judge granted Petitioner's application for asylum. (Ex. 6 to Minner Decl., ECF No. 8-1; *see generally* IJ Decision.) On December 31, 2018, the government appealed the Immigration Judge's decision to the Board of Immigration Appeals ("BIA"). (Ex. 7 to Minner Decl., ECF No. 8-1.)

On May 1, 2019, Petitioner filed this Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his ongoing detention. (*See generally* Pet. & Mem. in Supp.) Liberally construing the Petition in light of Petitioner's pro se status, *see Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004), Petitioner asserts that his detention has passed the presumptively reasonable six-month period set forth in *Zadvydas v. Davis*, 533 U.S. 678 (2001), and requests that he be immediately released. (*See generally* Mem. in Supp.)

On July 8, 2019, Respondents Barr, Wolf, Albence, and Berg (collectively, "the Federal Respondents") filed a Response to the Petition. (*See generally* Resp. to Pet.) Petitioner sought, and received, an extension of time to file a reply. (ECF Nos. 10, 11.) No reply, however, was filed by Petitioner.

---

[4] Petitioner also has a conviction for resisting a police officer and a second controlled-substance conviction for possessing methamphetamine. (Minner Decl. ¶¶ 6, 7; Ex. 2 at 3 to Minner Decl.)
[5] Section 236(c) of the Immigration and Nationality Act.

On October 4, 2019, the Federal Respondents filed a Supplemental Response to the Petition, which included the August 22, 2019 decision from the BIA on the government's appeal. (*See generally* Suppl. Resp., ECF No. 12, & Decision of the BIA ("BIA Decision"), Ex. 1 to Suppl. Decl. of Angela Minner, ECF No. 13-1.) The BIA sustained the government's appeal and vacated the grant of asylum. (BIA Decision at 4.) The BIA then remanded the case to the Immigration Judge for consideration of Petitioner's eligibility for protection under the Convention Against Torture.[6]

Since the case was remanded, there have been two hearings before the Immigration Judge in September 2019. (Suppl. Minner Decl. ¶ 5, ECF No. 13.) The case was then "continued for [Petitioner] to obtain counsel." (Suppl. Minner Decl. ¶ 5.) The next hearing was scheduled to take place in mid-October 2019. (Suppl. Minner Decl. ¶ 5.)

### III. ANALYSIS

"A writ of habeas corpus enables a person detained by the government to challenge the legality of his confinement and, if successful, obtain his release." *Abdulkadir A. v. Sessions*, No. 18-cv-2353 (NEB/HB), 2018 WL 7048363, at *2 (D. Minn. Nov. 13, 2018) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973)), *accepting report and recommendation*, 2019 WL 201761 (D. Minn. Jan. 15, 2019). Federal courts have jurisdiction to hear habeas challenges to the lawfulness of immigration-related detentions under 28 U.S.C. § 2241. *Demore v. Kim*, 538 U.S. 510, 516-17 (2003); *Zadvydas*, 533 U.S. at 687.

---

[6] "Because the [Immigration Judge] . . . granted [Petitioner's] application for asylum, the [Immigration Judge did] . . . not reach the application for withholding of removal and relief under the Convention [A]gainst Torture." (IJ Decision at 10.)

4

The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint— lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993); *accord Demore*, 538 U.S. at 523.

### A. No *Zadvydas* Claim

Petitioner bases the alleged unlawfulness of his continued detention on the Supreme Court's decision in *Zadvydas*, asserting that his "detention exceeds the presumptively reasonable period established in [that case]." (Mem. in Supp. at 2.) *Zadvydas*, however, concerned a different type of detention under a different statute than the type of detention to which Petitioner is presently subject. The detention at issue in *Zadvydas* was *post*-removal-order detention, *i.e.*, detention following a final order of removal, under 8 U.S.C. § 1231. 533 U.S. at 682; *see Demore*, 538 U.S. at 527; *Bah v. Cangemi*, 489 F. Supp. 2d 905, 915 (D. Minn. 2007). Petitioner is not being detained under § 1231. Rather, Petitioner is being detained under § 1226, which governs *pre*-removal-order detention. 8 U.S.C. § 1226(c)(1) (requiring the government to take certain aliens into custody pending a decision on removability); *see Bah*, 489 F. Supp. 2d at 915 ("[W]hile § 1226 generally governs detention *before* and *during* immigration proceedings, § 1231 generally governs detention *after* immigration proceedings.").

As Petitioner himself points out, the government appealed the grant of asylum to the BIA. There was no final order of removal. Further, Petitioner's immigration proceedings remain ongoing following the BIA's decision on the government's appeal. Because Petitioner's removal proceedings are still ongoing, "he [i]s not subject to a *final* order of removal and ha[s] no claim pursuant to *Zadvydas*." *Shol v. Sec'y of Homeland Sec.*, No. 18-cv-3139 (WMW/SER), 2019 WL 2746267, at *2 (D. Minn. Apr. 25, 2019) (citing *Demore*, 538 U.S. 527-29), *adopting report and recommendation sub nom.*, *Afeing Z. S. v. Sec'y of Homeland Sec.*, 2019 WL 2743776 (D. Minn. July 1, 2019).

Petitioner's circumstances are also distinguishable from the circumstances in *Bah v. Cangemi* and *Moallin v. Cangemi*, two cases from this District upon which he relies. *Bah* involved a complex shifting of sands between § 1231 and § 1226 detention based on a series of appeals to the BIA and Eighth Circuit Court of Appeals, which ultimately resulted in the order of removal being no longer administratively final. 489 F. Supp. 2d at 910-12, 914-21. Again, there has been no final order of removal in this case. *Moallin* involved the effect of an injunction on § 1231 detention following a final order of removal. 427 F. Supp. 2d 908, 911-12, 921-28 (D. Minn. 2006). Neither of which is present in this case.

In sum, because Petitioner is not subject to a final order of removal, he has no claim under *Zadvydas*.

### B.  § 1226(c) Detention

In light of Petitioner's pro se status, the Court construes his Petition as challenging his continued detention under 8 U.S.C. § 1226(c). *See Stone*, 364 F.3d at 915.

Section 1226(c) mandates that certain criminal aliens be taken into custody during removal proceedings. *Jennings v. Rodriguez*, 138 S. Ct. 830, 846 (2018); *Demore*, 538 U.S. at 517-18, 527-28. "In *Demore*, the Supreme Court held that the government may, consistent with the Due Process Clause, detain removable aliens under § 1226(c) for the 'brief period necessary' for removal proceedings to run their course." *Muse v. Sessions*, No. 18-cv-0054 (PJS/LIB), 2018 WL 4466052, at *2 (D. Minn. Sept. 18, 2018) (quoting 538 U.S. at 513); *see also, e.g.*, *Bolus A. D. v. Sec'y of Homeland Sec.*, 376 F. Supp. 3d 959, 961 (D. Minn. 2019) ("Mandatory detention pursuant to 8 U.S.C. § 1226(c) does not violate a detainee's Fifth Amendment due process rights during the 'brief period necessary' for removal proceedings."); *Liban M. J. v. Sec'y of Dep't of Homeland Sec.*, 367 F. Supp. 3d 959, 962 (D. Minn. 2019) ("The Supreme Court has held that detention under § 1226(c) is consistent with the Due Process Clause for the 'brief period necessary' required [sic] to complete removal proceedings.").

"Constitutional difficulties arise, however, when detention under § 1226(c) ceases to be 'brief.'" *Muse*, 2018 WL 4466052, at *2; *see also, e.g.*, *Bolus A. D.*, 376 F. Supp. 3d at 961; *Liban M. J.*, 367 F. Supp. 3d at 962. In *Zadvydas*, the Supreme Court cautioned that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." 533 U.S. at 690; *see Muse*, 2018 WL 4466052, at *2.

### 1. *Jennings v. Rodriguez*

Prior to the Supreme Court's decision in *Jennings*, "several federal courts of appeals—citing the canon of constitutional avoidance—construed § 1226(c) to include a reasonableness limitation on the length of time that an alien could be detained." *Muse*,

7

2018 WL 4466052, at *2 (collecting cases); *see Mohamed v. Sec'y Dep't of Homeland Sec.*, 376 F. Supp. 3d 950, 954 (D. Minn. 2018). The First, Third, Sixth, and Eleventh Circuits "adopted a fact-dependent reasonableness standard for judging whether the period of detention ha[d] exceeded this permissible duration." *Mohamed*, 376 F. Supp. 3d at 954; *see also Abdulkadir A.*, 2018 WL 7048363, at *10; *see, e.g.*, *Reid v. Donelan*, 819 F.3d 486, 500-01 (1st Cir. 2016), *withdrawn*, *Reid v. Donelan*, Nos. 14-1270, 14-1803, 14-1823, 2018 WL 4000993, at *1 (1st Cir. May 11, 2018); *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 473-78 (3d Cir. 2015), *abrogation recognized by Guerrero-Sanchez v. Warden York Cty. Prison*, 905 F.3d 208, 221 (3d Cir. 2018); *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 233-35 (3d Cir. 2011), *overruling recognized in Borbot v. Warden Hudson Cty. Corr. Facility*, 906 F.3d 274, 278 (3d Cir. 2018); *Ly v. Hansen*, 351 F.3d 263, 271-73 (6th Cir. 2003); *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199, 1214-19 (11th Cir. 2016), *vacated*, *Sopo v. U.S. Att'y Gen.*, 890 F.3d 952, 953-54 (11th Cir. 2018). "The Second and Ninth Circuits . . . adopted a bright-line rule, requiring a specific finding of flight risk or danger to the community to justify any pre-removal detention exceeding six months." *Mohamed*, 376 F. Supp. 3d at 954; *see also Abdulkadir A.*, 2018 WL 7048363, at *10; *see, e.g.*, *Lora v. Shanahan*, 804 F.3d 601, 613-16 (2d Cir. 2015), *cert. granted and judgment vacated*, *Shanahan v. Lora*, 138 S. Ct. 1260 (2018); *Rodriguez v. Robbins*, 804 F.3d 1060, 1077-81 (9th Cir. 2015), *reversed*, *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018); *Rodriguez v. Robbins*, 715 F.3d 1127, 1136-39 (9th Cir. 2013).

*Jennings* rejected the use of statutory interpretation to graft a reasonableness limitation onto § 1226(c). 138 S. Ct. at 842, 846-47; *see Muse*, 2018 WL 4466052, at *2.

8

In *Jennings*, the Supreme Court observed that although "§ 1226(c) does not on its face limit the length of the detention it authorizes," it "is *not* 'silent' as to the length of detention." 138 S. Ct. at 846. Section 1226(c) "mandates detention pending a decision on whether the alien is to be removed from the United States, and it expressly prohibits release from that detention except for narrow, witness-protection purposes." *Id.* (quotation and citation omitted); *see Ali v. Brott*, 770 F. App'x 298, 301 (8th Cir. 2019). Because "§ 1226(c) makes clear that detention of aliens within its scope *must* continue pending a decision on whether the alien is to be removed from the United States," statutory interpretation could not be used to alter its terms. *Jennings*, 138 S. Ct. at 846-47 (quotation omitted); *see Ali*, 770 F. App'x at 301; *Muse*, 2018 WL 4466052, at *2. *Jennings*, however, did not address the accompanying constitutional due process questions and remanded them for consideration by the appellate court in the first instance. 138 S. Ct. at 839, 851; *see Tao J. v. Sec'y of Dep't of Homeland Sec.*, No. 18-cv-1845 (NEB/HB), 2019 WL 1923110, at *2 (D. Minn. Apr. 30, 2019) ("*Jennings* did not address whether, at a certain point, prolonged detention implicates the Due Process Clause."); *Muse*, 2018 WL 4466052, at *2 ("The [*Jennings*] Court expressed no view on the constitutional question that the lower courts had tried to avoid: What limitations does the Due Process Clause place on detention under § 1226(c)?").

### 2. Evaluating § 1226(c) Detention After *Jennings*

#### a. *Muse* Factors

Following *Jennings*, courts in this District have "h[eld] that a due-process challenge to § 1226(c) detention must be resolved by closely examining the facts of the particular

9

case to determine whether the detention is reasonable." *Muse*, 2018 WL 4466052, at *3; *see Mohamed*, 376 F. Supp. 3d at 956-58; *see, e.g.*, *Tao J.*, 2019 WL 1923110, at *3-4; *Bolus A. D.*, 376 F. Supp. 3d at 961-62; *Liban M. J.*, 367 F. Supp. 3d at 963-65; *Abdulkadir A.*, 2018 WL 7048363, at *11-13.  Several factors are considered "in identifying the point at which continued detention becomes unreasonable and the Executive Branch's implementation of § 1226(c) becomes unconstitutional unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community."  *Muse*, 2018 WL 4466052, at *3 (quotation omitted).  These factors include:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays of the removal proceedings caused by the detainee; (5) delays of the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Id.*[7]

---

[7] These factors are based on *Reid*, 819 F.3d at 500-01, which was decided prior to *Jennings*.  As the Federal Respondents point out, the First Circuit Court of Appeals has since withdrawn *Reid*.  2018 WL 4000993.  Acknowledging that *Reid* was withdrawn after *Jennings*, *Muse* found that these "factors 'represent a reasonable framework for balancing the due process interests at stake' even though they were 'originally adopted in the context of reading an implicit reasonableness limitation into § 1226(c).'"  2018 WL 4466052, at *3 n.3 (quoting *Portillo v. Hott*, No. 1:18-470, 2018 WL 3237898, at *7-9 (E. D. Va. July 3, 2018)).  And courts in this District have continued to apply these factors, finding unpersuasive arguments like those advanced by the Federal Respondents regarding their use.  *See, e.g.*, *Omar M. v. Barr*, No. 18-cv-2646 (JNE/ECW), 2019 WL 2755937, at *2 (D. Minn. July 2, 2019), *appeal dismissed*, No. 19-2881 (8th Cir. Oct. 17, 2019); *see also Tao J.*, 2019 WL 1923110, at *3 n.3; *Bolus A. D.*, 376 F. Supp. 3d at 961 n.2; *Liban M. J.*, 367 F. Supp. 3d at 963 n.3; *Abdulkadir A.*, 2018 WL 7048363, at *11 n.3; *Mohamed*, 376 F. Supp. 3d at 957-58; *cf. Abshir H. A. v. Barr*, No. 19-cv-1033 (PAM/TNL), 2019 WL 3719414, at *2 (D. Minn. Aug. 7, 2019).

### b. Application of *Muse* Factors

#### i. First Factor: Length of Detention to Date

The first factor is the length of detention to date. *Muse*, 2018 WL 4466052, at *4. The length of detention "is critical to the due-process inquiry." *Id.* "[T]he longer detention persists, the more difficult it is for the government to justify continued detention." *Bolus A. D.*, 376 F. Supp. 3d at 961. "Continued detention without inquiry into its necessity becomes more and more suspect as detention continues past the time frame described in *Demore*." *Abdulkadir A.*, 2018 WL 7048363, at *12 (quotation omitted); *see Liban M. J.*, 367 F. Supp. 3d at 963 ("This inquiry contemplates how long the deprivation [of liberty] has lasted and is critical of detention that can no longer be categorized as brief." (quotation omitted)). "*Demore* expressed the understanding that detention under § 1226(c) would be brief, and this assumption was key to the [Supreme] Court's conclusion that the law complied with due process." *Muse*, 2018 WL 4466052, at *4 (quotation omitted); *see Demore*, 538 U.S. at 528-31. "As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing." *Muse*, 2018 WL 4466052, at *4; *see Reid v. Donelan*, 390 F. Supp. 3d 201, 219 (D. Mass. 2019) ("To provide guidance in determining the reasonableness of prolonged mandatory detention under § 1226(c), the Court concludes, based on the record and the Government's own policies, that such detention is likely to be unreasonable if it lasts more than one year during removal proceedings before the agency, excluding any delays due to the alien's dilatory tactics." (footnote omitted)), *appeals docketed*, No. 19-cv 1900 (1st Cir. Sept. 23, 2019), No. 19-1787 (1st Cir. Aug. 13, 2019).

11

Petitioner has been detained for over a year, which is "beyond the 'brief' period assumed in *Demore*." *Liban M. J.*, 367 F. Supp. 3d at 964. Under existing case law in this District and elsewhere, the length of Petitioner's detention weighs in his favor. *See, e.g.*, *Malcolm A. H. v. Green*, Civil Action No. 19-264 (JMV), ___ F. Supp. ____, 2019 WL 3712179, at *4 (D. N.J. Aug. 7, 2019) (more than 14 months), *appeal docketed*, No. 19-3288 (3rd Cir. Oct. 11, 2019); *Tao J.*, 2019 WL 1923110, at *3 (approximately 14.5 months); *Fremont v. Barr*, No. 18-cv-1128, 2019 WL 1471006, at * 4 (W.D. N.Y. Apr. 2, 2019) (approximately one year); *Vargas v. Beth*, 378 F. Supp. 3d 716, 727 (E.D. Wis. Mar. 22, 2019) (approximately 9.5 months), *appeal dismissed*, No. 19-1965, (7th Cir. July 18, 2019); *Liban M. J.*, 367 F. Supp. 3d at 963 (approximately 12 months); *Abdulkadir A.*, 2018 WL 7048363, at *12 (9 months); *Muse*, 2018 WL 4466052, at *4 (over 14 months); *see also Reid*, 390 F. Supp.3d at 219 (detention beyond one year likely to be unreasonable); *Doe v. Beth*, No. 18-C-1672, 2019 WL 1923867, at *4 (E.D. Wis. Apr. 29, 2019) (listing cases granting individualized bond hearings for detentions lasting between 7 and 48 months).

The Federal Respondents direct the Court to two cases out of the District of New Jersey in which detentions similar to and longer than Petitioner's were upheld. *See Dryden v. Green*, 321 F. Supp. 3d 496, 502 (D. N.J. 2018) (just over a year); *Maynard v. Hendrix*, Civil Action No. 11-0605 (WJM), 2011 WL 6176202, at *1, 3-4 (D. N.J. 2011) (more than 17 months). Notably, in *Maynard*, the "[p]etitioner had *ten times* requested continuances to obtain counsel or prepare his case." 2011 WL 6176202, at *3 (emphasis added).

12

The Court recognizes that "there is no bright-line rule for what constitutes a reasonable length of detention." *Liban M. J.*, 367 F. Supp. 3d at 963-64; *see Reid*, 390 F. Supp. 3d at 220 ("This one-year period is not a bright line."). The Court also recognizes that these and other authorities lend support to the Federal Respondents' position. *See, e.g.*, *Selvin M. R. v. Green*, Civil Action No. 18-14058 (JLL), 2019 WL 981651, at *3 (D. N. J. Feb. 27, 2019) (14 months); *Vukosavljevic v. Low*, No. 3:18-cv-1235, 2018 WL 6706691, at *2 (M.D. Penn. Dec. 20, 2018) (just over a year); *Misquitta v. Warden Pine Prairie ICE Processing Ctr.*, 353 F. Supp. 3d 518, 527 (W.D. La. 2018) (not likely to succeed on claim that ten months of detention was unreasonable), *appeal dismissed*, No. 18-31246 (5th Cir. Feb. 7, 2019); *Carlos A. v. Green*, Civil Action No. 18-741 (SDW), 2018 WL 3492150, at *5 (D. N.J. July 20, 2018) (just over a year). Based on the weight of the authority, however, the Court concludes that this factor weighs in Petitioner's favor.

### ii.   Second Factor: Likely Duration of Future Detention

The second factor is the likely duration of future detention, "consider[ing] how long the detention is likely to continue in the absence of judicial relief." *Muse*, 2018 WL 4466052, at *5. In doing so, "courts consider the anticipated duration of the entire judicial and administrative process." *Bolus A. D.*, 376 F. Supp. 3d at 962; *see Muse*, 2018 WL 4466052, at *5. In their initial Response, the Federal Respondents asserted that Petitioner's "proceedings [we]re reaching their final stages" and "[i]f the government wins at the BIA *and there is no remand for any further issues*, [Petitioner] could be removed to Somalia, even if he appeal[ed] to the Eighth Circuit." (Resp. to Pet. at 20 (emphasis added).) In their Supplemental Response, the Federal Respondents acknowledge that such a remand

has in fact occurred, and additional proceedings are now taking place. The Federal Respondents do not estimate how long these proceedings are likely to take.

The Court is not in a position to speculate on the final outcome of Petitioner's removal proceedings. *See infra* Section III.B.2.b.vi. It is, however, quite likely that Petitioner's detention will continue for several more months absent judicial intervention. There is no final order of removal. At minimum, there is likely to be another appeal to the BIA by the non-prevailing party following the Immigration Judge's decision on whether Petitioner is entitled to relief under the Convention Against Torture. *See Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 859 (D. Minn. 2019). Thus, "tak[ing] into account the anticipated duration of all [Petitioner's] removal proceedings, including administrative and judicial appeals," Petitioner may well continue to be detained for a significant period of time. *Omar M. v. Barr*, No. 18-cv-2646 (JNE/ECW), 2019 WL 3570790, at *6 (D. Minn. May 6, 2019), *adopting report and recommendation*, 2019 WL 2755937 (D. Minn. July 2, 2019), *appeal dismissed*, No. 19-cv-2881 (8th Cir. Oct. 17, 2019); *see, e.g.*, *Abshir H. A.*, 2019 WL 3719414, at *2; *Tao J.*, 2019 WL 1923110, at *3; *Bolus A. D.*, 376 F. Supp. 3d at 962; *Jamal A.*, 358 F. Supp. 3d at 859; *Abdulkadir A.*, 2018 WL 7048363, at *12. Accordingly, this factor likewise favors Petitioner.

### iii.   Third Factor: Conditions of Detention

The third factor is the conditions of detention. *Muse*, 2018 WL 4466052, at *5. "Aliens held under § 1226(c) are subject to civil detention rather than criminal incarceration." *Id.* "Whether the conditions of civil immigration detention are meaningfully different from those of criminal detention factors into the reasonableness of

Petitioner's detention." *Liban M. J.*, 367 F. Supp. 3d at 964; *accord Tao J.*, 2019 WL 1923110, at *4. "The more that the conditions under which the alien is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Muse*, 2018 WL 4466052, at *5. Further, "the weight of this factor increases with the length of detention." *Bolus A. D.*, 376 F. Supp. 3d at 962; *accord Muse*, 2018 WL 4466052, at *5.

The Federal Respondents do not dispute that Petitioner is being detained at a criminal corrections facility, namely, the Kandiyohi County Jail. As such, the conditions of Petitioner's detention are difficult to distinguish from those in criminal incarceration. *See Bolus A. D.*, 376 F. Supp. 3d at 962 (confinement "in a corrections facility with inmates who are either serving criminal sentences or awaiting criminal trials" is "indistinguishable from criminal incarceration"); *Muse*, 2018 WL 4466052, at *5 (confinement "in a county jail alongside inmates who are serving criminal sentences" is "indistinguishable from penal confinement"). These conditions coupled with the length of Petitioner's detention result in this factor also weighing in Petitioner's favor. *See Bolus A. D.*, 376 F. Supp. 3d at 962; *see also Abshir H. A. v. Barr*, No. 19-cv-1033 (PAM/TNL), 2019 WL 3719414, at *7 (D. Minn. June 28, 2019) (county jail), *adopting report and recommendation*, 2019 WL 3719414 (D. Minn. Aug. 7, 2019); *Omar M.*, 2019 WL 3570790, at *6 (county jail); *Tao J.*, 2019 WL 1923110, at *4 (criminal correctional facility); *Liban M. J.*, 367 F. Supp. 3d at 964 (criminal correctional facility); *Jamal A.*, 358 F. Supp. 3d at 860 (county jail); *Abdulkadir A.*, 2018 WL 7048363, at *12 (county jail); *Muse*, 2018 WL 4466052, at *5 (county jail).

15

### iv. Fourth Factor: Delays in the Immigration Proceedings Caused by the Alien

The fourth factor considers any delays in the immigration proceedings caused by Petitioner. *See Muse*, 2018 WL 4466052, at *5. As explained in *Muse*,

> [a]n alien should not be punished for raising legitimate defenses to removal. Courts should, however, be sensitive to the possibility that dilatory tactics by the removable alien may serve not only to put off the final day of deportation, but also to compel a determination that the alien must be released because of the length of his incarceration. If courts did not take into account the alien's role in delaying removal proceedings, they would encourage deportable criminal aliens to raise frivolous objections and string out the proceedings in the hopes that a federal court will find the delay 'unreasonable' and order their release.

*Id.* (quotations and citations omitted).

The Federal Respondents point out that Petitioner sought two extensions with the BIA, which consequently delayed resolution of the government's appeal by two months. (Resp. to Pet. at 20; Minner Decl. ¶ 14.) And, following the BIA's remand, Petitioner's immigration proceedings were continued for approximately two weeks so Petitioner could obtain counsel. (Suppl. Minner Decl. ¶ 5.)

Other than the continuance for Petitioner to obtain counsel, there is nothing in the record regarding the reason(s) Petitioner requested additional time. Collectively, these delays amount to almost a quarter of the total time Petitioner has been detained. At the same time, while these delays are attributable to Petitioner by virtue of the fact that he requested them, the Federal Respondents do not assert, nor does the record suggest, that

16

Petitioner has engaged in dilatory tactics.[8]  On balance, the Court finds that this factor weighs slightly in favor of continued detention.

### v. Fifth Factor: Delays in Immigration Proceedings Caused by the Government

Conversely, the fifth factor considers any delays in the immigration proceedings caused by the government.  *See Muse*, 2018 WL 4466052, at *6.  Petitioner does not accuse the government of delay.  Further, although the government appealed the Immigration Judge's decision to the BIA, the government was within its rights to do so.  *See Omar M.*, 2019 WL 3570790, at *6; *Abdulkadir A.*, 2018 WL 7048363, at *12.  Each party has the right to advance substantive arguments in support of its position throughout the process.  *See, e.g.*, *Bolus A. D.*, 376 F. Supp. 3d at 962; *Liban M. J.*, 367 F. Supp. 3d at 965; *Muse*, 2018 WL 4466052, at *5-6.  Accordingly, this factor in weighs in favor of continued detention.

### vi. Sixth Factor: Likelihood of a Final Removal Order

The sixth and final factor is "the likelihood that the proceedings will culminate in a final removal order."  *Muse*, 2018 WL 4466052, at *6.  "The more likely that the alien will be removed, the longer the detention that will be deemed reasonable."  *Id.*

As this Court has previously observed, judges in this District have declined to speculate on the outcome of pending proceedings and most often evaluate this factor to be neutral.  *Abshir H. A.*, 2019 WL 3719467, at *8;  *see, e.g.*, *Omar M.*, 2019 WL 3570790,

---

[8] As noted above, Petitioner was granted an extension of time to file a reply in this habeas case.  This extension does not appear to have had any impact Petitioner's immigration proceedings.

at *7 ("The court is not in a position to weigh the merits of the removal order, and therefore finds this factor neutral."); *Tao J.*, 2019 WL 1923110, at *4 ("The Court agrees it is not in the position to weigh the merits of the removal order and thus finds this factor to be neutral. The Court cannot predict what will occur with DHS's appeal to the BIA, and thus does not have a sufficient basis to determine whether Petitioner will likely be removed."); *Bolus A. D.*, 376 F. Supp. 3d at 962 ("[A]s the Court is not in a position to weigh the merits of either the government's grounds for removal or B.D.'s appeal, this factor is neutral."); *Abdulkadir A.*, 2018 WL 7048363, at *12 ("This Court is not inclined to speculate about the merits of the arguments before the BIA or the BIA's ruling."). The Court is likewise inclined not speculate on Petitioner's claim for relief under the Convention Against Torture and the outcome of the pending immigration proceedings.

### vii.   Balance of *Muse* Factors

In sum, three of the factors weigh in Petitioner's favor; two factors (one slightly) weigh in favor of continued detention; and the remaining factor is neutral. The Court finds that continuing to detain Petitioner without affording him a bond hearing would violate his right to due process under the Fifth Amendment, and therefore recommends that the Petition be granted in part. *See Omar M.*, 2019 WL 3570790, at *7; *Tao J.*, 2019 WL 1923110, at *4; *Bolus A. D.*, 376 F. Supp. 3d at 962; *Liban M. J.*, 367 F. Supp. 3d at 965; *Jamal A.*, 358 F. Supp. 3d 860; *Abdulkadir A.*, 2018 WL 7048363, at *13; *Muse*, 2018 WL 4466052, at *6; *Mohamed*, 376 F. Supp. 3d at 957-58. To the extent that Petitioner seeks immediate release, however, the Court recommends that the Petition be denied.

Should this Court's recommendation be adopted, the Court further recommends that an Immigration Judge provide Petitioner with a bond hearing within 30 days of any such order. At the bond hearing, the Immigration Judge shall make an individualized determination regarding whether Petitioner's detention is necessary to protect the community and/or to prevent Petitioner from fleeing.[9]

[Continued on next page.]

---

[9] Determinations as to the applicable standard of proof and who is to bear it are most appropriately deferred to the Immigration Judge in the first instance. *See, e.g.*, *Bolus A. D.*, 376 F. Supp. 3d at 963; *Muse*, 2018 WL 4466052, at *6; *see also Jamal A.*, 358 F. Supp. 3d at 860 n.6.

## IV. RECOMMENDATION

Based upon the record, memoranda, and the proceedings herein, and for the reasons stated above, **IT IS HEREBY RECOMMENDED** that:

1. Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1) be **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

2. Petitioner's request for immediate release be **DENIED**.

3. If this Report & Recommendation is adopted, an Immigration Judge shall provide Petitioner with a bond hearing within 30 days of such order. At the bond hearing, the Immigration Judge shall make an individualized determination regarding whether Petitioner's detention is necessary to protect the community and/or to prevent Petitioner from fleeing.


Dated: November  19  , 2019         *s/ Tony N. Leung*
                                      Tony N. Leung
                                      United States Magistrate Judge
                                      District of Minnesota


                                      *Ahmed M. H. v. Barr*
                                      Case No. 19-cv-1175 (JRT/TNL)


### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).